UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Jeffrey Cambria</u>

    v.                                   Civil No. 09-cv-408-JL

<u>Rockingham County Department</u>
<u>of Corrections</u>

**REPORT AND RECOMMENDATION**

Before the Court is Jeffrey Cambria's complaint, filed pursuant to 42 U.S.C. § 1983, alleging that officials at the Rockingham County Department of Corrections ("RCDOC") have violated his constitutional rights (document no. 1). The matter is before me for preliminary review to determine, among other things, whether the complaint states any claim upon which relief might be granted. <u>See</u> 28 U.S.C. § 1915A(a); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2).

Cambria's complaint also includes a request for preliminary injunctive relief which has been referred to me for consideration (document no. 4). A hearing was held before me on that request on December 10, 2009.

Standard of Review

1. Preliminary Review of Prisoner Complaints

Under this Court's local rules, when an incarcerated person commences an action pro se and in forma pauperis, the Magistrate Judge conducts a preliminary review. LR 4.3(d)(2). In conducting the preliminary review, the Court construes all of the factual assertions in the pro se pleadings liberally, however inartfully pleaded. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pro se pleadings liberally in favor of the pro se party). "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the correct cause of action, even if it was imperfectly pled." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381 (2003) (courts may construe pro se pleadings to avoid inappropriately stringent rules and unnecessary dismissals). This review ensures that pro se pleadings are given fair and meaningful consideration.

To determine if a pro se complaint states any claim upon which relief could be granted, the Court must consider whether

the complaint, construed liberally, Erickson, 551 U.S. at 94, "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Inferences reasonably drawn from the plaintiff's factual allegations must be accepted as true, but the Court is not bound to credit legal conclusions, labels, or naked assertions, "devoid of 'further factual enhancement.'" Id. (citation omitted).  Determining if a complaint sufficiently states such a claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950 (citation omitted).

2. Preliminary Injunction

Preliminary injunctive relief is available to protect the moving party from irreparable harm, so that he may obtain a meaningful resolution of the dispute after full adjudication of the underlying action.  See Jean v. Mass. State Police, 492 F.3d 24, 26-27 (1st Cir. 2007).  A preliminary injunction cannot issue

unless the moving party satisfies four factors which establish its need for such relief. See Esso Std. Oil Co. v. Monroig-Zavas, 445 F.3d 13, 17-18 (1st Cir. 2006) (discussing the requisite showing to obtain a preliminary injunction); see also Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18-19 (1st Cir. 1996) (explaining the burden of proof for a preliminary injunction). Those factors are: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." Esso Std. Oil, 445 F.3d at 18. "The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002).

## Background

Jeffrey Cambria is an inmate at the RCDOC. In November 2009, Cambria requested, and received, from this Court an

information packet on filing a federal lawsuit.  That paperwork
was later confiscated from Cambria's cell by RCDOC officers after
a search during which, the officers claimed, contraband was
found.  Cambria thereafter requested the return of his legal
materials, but did not receive them.[1]  Cambria testified that he
wants to file a civil rights lawsuit complaining of the
conditions of his confinement at the RCDOC, but he has not been
able to, both because his paperwork from this Court was
confiscated, and because the legal materials available to him at
the RCDOC library are inadequate to assist him in preparing his
suit.[2]

---

[1] RCDOC Capt. Steven Church testified at the December 10, 2009 hearing that, per RCDOC policy, the legal materials seized from Cambria's cell should have been placed into Cambria's personal property and returned to him after his period of disciplinary sanction was over.  In this case, however, the materials were not in Cambria's personal property when Church looked for them.  Church testified that he is investigating the location of Cambria's papers.  In the meantime, this Court has provided Cambria with another packet of information regarding filing a civil rights lawsuit pursuant to 42 U.S.C. § 1983.

[2] Cambria was not very specific, either in his complaint or in his testimony, as to the nature of the lawsuit he sought to file, although he made reference in his testimony to unhygienic food and food service, a denial of due process in the RCDOC disciplinary procedures, and a denial of meaningful access to the courts.

Cambria further complains that RCDOC Officer McMasters told him that he would not be able to access the RCDOC library, or any legal materials, without a court order specifically directing such access or evidence of an active pending case before the courts. In addition, Cambria claims he was told that any request for legal research or information would have to be approved by an RCDOC lieutenant before Cambria would receive those materials.

At the hearing on this matter, Cambria testified that this is not the first time he has been incarcerated at the RCDOC, and that, based on his experience in his previous incarcerations, he believed the RCDOC law library to be inadequate to assist him in preparing his defense to his criminal charges or in filing a civil lawsuit. Cambria testified that upon arrival at the RCDOC, he asked RCDOC staff if the library was still inadequate, and was told that no changes had been made since his last incarceration. Based on that information, Cambria did not request access to the law library, although he was in need of legal materials, as he believed the library did not contain the information he needed and that access to the library would be useless. Cambria stated that while he knew he could fill out a request for specific legal

materials, without access to appropriate legal resources, he does not know what to request.

Notwithstanding his professed inability to request appropriate, specific legal resources, Cambria testified that he did request certain legal documents regarding his criminal case from RCDOC Lt. Consentino. Cambria first testified that he was forced to plead guilty to his criminal charges because he was unable to adequately prepare a defense due to the lack of access to legal materials. While Cambria was hesitant, at the hearing, to admit that Lt. Consentino had fully satisfied his request for legal information, in a note to Lt. Consentino, Cambria thanked the lieutenant and stated that he received the materials in time to use them to his advantage in negotiating a plea agreement in his criminal case. Cambria also stated that he had counsel in his criminal matter who was available to assist him with legal research or legal issues.

Cambria described the law library at the RCDOC as a closet containing very few legal materials, none of which were helpful to him in preparing to defend his criminal case or prosecute a civil action. Cambria also stated that books that would be useful and that are in the library, such as the New Hampshire

statutes, have been torn up by inmates who remove the useful sections to bring back to their cells.

RCDOC Captain Steven Church testified at the hearing. Capt. Church is one of the RCDOC officials presently responsible for the content of the RCDOC law library. Church testified that the library does, in fact, include updated and annotated copies of New Hampshire statutes that are in good repair, a New Hampshire practice guide, state and federal court rules, this Court's pro se litigant guide, and at least one book described as "U.S. codes annotated." Def.'s Ex. E. The library lacks any New Hampshire or federal reporters, and therefore, the access to caselaw for inmate research is very limited. Case names, if needed, would need to be obtained by looking in the New Hampshire practice series or in the annotations to statutes. Also, an inmate can submit search terms to Lt. Consentino and he will conduct a search for cases or information for the inmate. Capt. Church acknowledged that the library is not complete, and testified that there were proposals pending to improve the legal resources available to inmates, but that the 2010 budgetary allowance needed to obtain those resources has not yet been approved.

Discussion[3]

I.  Denial of Access to the Courts

Prisoners have a constitutional right of access to the courts that affords them access to the tools necessary to challenge their criminal cases, criminal convictions and sentences directly or collaterally, to file habeas petitions, or to challenge the conditions of their confinement through civil rights actions.  See Lewis v. Casey, 518 U.S. 343, 345 (1996).  In order to state a claim for denial of access to the courts under § 1983, a prisoner must demonstrate that the prison officials' actions "hindered his efforts to pursue a legal claim" that he is constitutionally entitled to pursue during his incarceration.  Id. at 351.  During his incarceration, Cambria is entitled to legal resources which, in the aggregate, enable him to defend his criminal charges and to pursue civil rights actions complaining of the conditions of his confinement.  See Bounds v. Smith, 430 U.S. 817, 832 (1977).

---

[3]The claims, as identified herein, will be considered to be the claims raised in the complaint for all purposes.  If Cambria disagrees with the claims as identified, he must do so by properly objecting to this Report and Recommendation within fourteen days of its issue, or by properly moving to amend his complaint.

    A.   <u>Law Library</u>

Cambria asserts in his complaint, and testified at the hearing, that he has been unable to file a civil rights lawsuit challenging the conditions of his confinement because of the inadequacy of legal resources available to him at the RCDOC. Cambria's testimony, however, failed to convince me that the legal resources available to him would be inadequate to assist him in filing such a suit.

Cambria testified that he did not actually make any request to go to the library before filing his complaint here, as he assumed, based on his prior experience at the RCDOC and a conversation with an RCDOC officer, that the library would be inadequate to meet his needs. According to his testimony, Cambria's visit to the library two days before the hearing did not change his mind. Capt. Church's testimony, however, made clear that there were a number of resources available in the library of which Cambria failed to avail himself. Further, Capt. Church and Cambria both testified that inmates who could not research a particular legal topic in the library were able to submit search terms to Lt. Consentino, who would conduct a search for materials for the inmate.

Cambria conceded that he did request that Lt. Consentino conduct legal research for him on his criminal case, and that the materials he obtained that way satisfied his request.  Cambria produced no evidence, however, that he had requested legal research on the specific topics of food and food service problems, due process rights in disciplinary hearings, or the adequacy of jail law libraries, the topics he claimed would form the basis of his intended civil suit, except his own testimony that he had requested that Lt. Consentino provide him with New Hampshire caselaw regarding due process rights at disciplinary hearings, and that Lt. Consentino find a case he had heard of involving a soldier's right to disobey an unreasonable order. While Cambria claimed to have made numerous oral and written requests for such materials, his inmate file contained no such requests, and he was unable to state any specific materials or legal searches he had requested and not received.

At the hearing, Cambria claimed that food service was unhygienic, but it appears that problem may have occurred during a previous incarceration, rather than his present incarceration. In any event, there is no reference to food or food service in Cambria's complaint.  Further, while Cambria claimed to have been

denied due process in a disciplinary hearing, Capt. Church testified, and Cambria agreed, that he had, in fact, been granted a hearing after receiving an immediate sanction for a disciplinary infraction for contraband in his cell, and that after a hearing, the disciplinary matter was dismissed, and no further disciplinary action was imposed.  Cambria neither identified any additional process he was entitled to nor claimed to have been denied any process he requested.  Again, there is no mention of a denial of due process in RCDOC disciplinary hearings in Cambria's complaint.

The third issue Cambria claimed he wanted to litigate was the adequacy of the law library at the RCDOC.  As stated above, however, except for general assertions of his frustration with what he perceived to be a paucity of available legal materials at the RCDOC, Cambria was unable to identify with any specificity any request he has made for legal materials that was not fulfilled by RCDOC staff.  Further, Cambria was not credible when he testified that he had made many requests for legal research that went unanswered.  While Cambria claimed to have made

numerous written and oral requests, he was evasive and dodgey when asked to be more specific.[4]

I find that Cambria has failed to allege specific facts to assert a claim that he was hindered in an effort to file a civil rights lawsuit regarding the conditions of his present confinement. Accordingly, I find that Cambria cannot sustain a meaningful access to the courts claim on that basis. See Ashcroft, 129 S. Ct. at 1949.

As to his criminal case, Cambria stated that Lt. Consentino had provided him with all of the materials he requested, and that the materials had been helpful in gaining leverage for a favorable plea bargain in his case. In addition, Cambria conceded he had legal counsel to represent him in his criminal

---

[4]While not specifically relevant to any issue pending in this case, other testimony provided by Cambria tended to undermine his credibility. Cambria testified, clearly and angrily, that Court mail came to him in an envelope that had been opened. When the truth of that statement was challenged, and Cambria was specifically asked if he had previously testified that his mail had arrived opened, Cambria denied that his mail had arrived open, and denied having so testified earlier in the hearing. Instead, Cambria angrily objected to having been made to open his legal mail in front of RCDOC officers. While the state of the envelope is not material to any particular fact in this case, Cambria's ability to vociferously assert whatever position he believes to be to his advantage at any given moment, even if the statement is an about-face from his earlier testimony, puts Cambria's credibility generally into question.

case who was available to help him conduct research or to conduct research on his behalf. Although Cambria stated that he did not have an attorney during the first 12-14 days he was at the RCDOC, there was no evidence that the delay hindered his criminal defense. Cambria asserted at the hearing that he would have gone to trial rather than plead guilty had he been given more access to legal materials. That assertion is not credible, given Cambria's thank you note to Lt. Consentino, which demonstrates that he got the information he was seeking, and that he used the information to help obtain a plea agreement he was happy with. I find that Cambria has not demonstrated that his criminal defense was in any way hindered by a lack of access to legal materials. Accordingly, Cambria's meaningful access to the courts claim cannot rest on any obstacle to his criminal defense.

B.  <u>Seizure of Legal Materials</u>

Cambria claims that his legal materials, specifically a packet provided to him by this Court to assist him in filing an action here, were improperly removed from his cell and not returned. While the evidence at the hearing demonstrated that the packet in question was removed from his cell and apparently misplaced or lost, there is no evidence that this was more than a

mistake made by a corrections officer that has not caused Cambria any harm or prejudice.  I cannot find that Cambria has alleged a constitutionally actionable event regarding the paperwork.  Further, to the extent that the continued deprivation of the documents could ever become a cognizable claim, the matter is moot as Cambria was provided with a new packet for filing a § 1983 claim in this Court at the December 10 hearing.  I recommend that any intended claim based on the deprivation of legal papers be dismissed.

## Conclusion

Cambria attempts to assert a claim for the denial of meaningful access to the courts.  He has, as explained above, failed to state any such claim upon which relief might be granted.  Further, I find that even bolstered by his testimony at the hearing, Cambria has failed to state any claim upon which relief might be granted, and he has therefore failed to demonstrate that he is likely to succeed on the merits of any of his claims.  Accordingly, I recommend that the request for preliminary injunction be denied and the complaint be dismissed.

Any objections to this report and recommendation must be filed within fourteen (14) days of receipt of this notice.

Failure to file objections within the specified time waives the right to appeal the district court's order.  See <u>Unauth. Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:    December 16, 2009

cc:      Jeffrey Cambria, pro se

JM:jba